UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN B. DARNELL<br>AND LAURA DARNELL | CIVIL ACTION |
| VERSUS | |
| CHARLES WILLIAMS,<br>ET AL | NO. 11-428-BAJ-M2 |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, September 1, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN B. DARNELL<br>AND LAURA DARNELL | CIVIL ACTION |
| VERSUS | |
| CHARLES WILLIAMS,<br>ET AL | NO. 11-428-BAJ-M2 |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the motion to remand (R. Doc. 6) filed by plaintiffs, Steven B. Darnell ("Mr. Darnell") and Laura Darnell ("Mrs. Darnell")(collectively "plaintiffs"). The removing defendant, Swift Transportation Services, LLC ("Swift"), has filed an opposition (R. Doc. 7) to plaintiffs' motion.

## FACTS & PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, on or about June 2, 2011. The suit involves personal injuries allegedly sustained by plaintiff, Mr. Darnell, when the 2007 Volvo Tractor Truck that he was operating was "suddenly and without warning" rear-ended by a 2009 Freightline Tractor Truck operated by defendant, Charles Williams ("Williams"), and owned by defendant, Swift. Plaintiffs allege that, as a result of the accident in question, Mr. Darnell "sustained personal injuries which have caused him substantial pain and suffering, mental anguish, lost wages, [and] loss of enjoyment of life," for which plaintiffs have "incurred significant

1

medical expenses."[1]  It is further alleged that Mrs. Darnell has experienced a loss of consortium due to the injuries her husband sustained and that she is entitled to be compensated for such loss.

On June 24, 2011, Swift removed the plaintiffs' suit to this Court on the basis of diversity jurisdiction.  Plaintiffs have now filed the present motion, seeking remand of this case to state court on the basis that the requisite monetary amount is not in controversy for purposes of diversity jurisdiction.

## **LAW & ANALYSIS**

Under 28 U.S.C. § 1332(a), a federal court has diversity jurisdiction if the matter in controversy:  (1) exceeds $75,000.00, exclusive of interest and costs, and (2) is between citizens of different states.[2]  Because plaintiffs in Louisiana state courts, by law, may not specify the numerical value of claimed damages, the removing defendant has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00.  *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000).  A defendant makes that showing when it is "facially apparent" from a reading of the complaint that the plaintiff's claims are likely to exceed $75.000.00.  *Allen v. R & H Oil & Gas Co.*, 63

---

[1] Plaintiffs seek damages for the following alleged injuries to Mr. Darnell:  (1) past and future medical expenses; (2) past and future physical pain and suffering; (3) past and future mental pain and anguish; (4) physical impairment; and (5) loss of enjoyment of life.

[2] It is undisputed that the parties in this matter are citizens of different states, as the plaintiffs are alleged to be domiciled in the State of Georgia; defendant, Williams, is alleged to be a domiciliary of the State of Texas; Swift is alleged to be a Delaware limited liability company with its principal place of business in Phoenix, Arizona; defendant, Southeastern Freight Lines, Inc. ("Southeastern") is alleged to be a South Carolina corporation with its principal place of business in South Carolina; and Discover Property & Casualty Insurance Company ("Discover") is allegedly a foreign insurer with its principal place of business in Minnesota.  Swift, Southeastern, and Discover are alleged by the plaintiffs to be authorized to do and doing business in the State of Louisiana, an allegation that Swift does not appear to challenge.  Thus, the only issue herein is whether the requisite amount is in controversy for purposes of diversity jurisdiction.

F.3d 1326, 1335 (5th Cir. 1995).

If it is not "facially apparent," the court may rely on "summary judgment-type" evidence relevant to the amount in controversy at the time of removal to make the determination. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)*; White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003). All doubts and uncertainties regarding federal jurisdiction must be resolved in favor of remand. *Sutherland v. First Nationwide Mortgage Corp.*, 2000 WL 1060362 (N.D. Tex 2000). Under any manner of proof, jurisdictional facts which support removal must be judged at the time of removal, and post-petition affidavits are allowable only if relevant to that period of time. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

If a removing defendant shows that the amount in controversy is likely to exceed the federal jurisdictional minimum, the burden then shifts to the plaintiff to show that it is a "legal certainty" that he or she will not be able to recover the jurisdictional amount – a burden which can be met by: (1) showing state procedural rules binding the plaintiff to his/her pleadings;[3] or (2) filing a binding stipulation or affidavit to that effect with the complaint. *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995).

Looking solely at the allegations in the plaintiffs' petition, it is ambiguous as to whether or not their damages in this matter will exceed $75,000.00, exclusive of interest and costs. The list of damages contained in the petition is general and similar to the customary damages set forth by personal injury plaintiffs, which do not provide the Court

---

[3] For example, the plaintiffs' state court petition might cite a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* clause from being increased by amendment.

3

with any guidance as to the monetary amount of damages plaintiffs have or will incur in this matter. Additionally, the plaintiffs did not pray for a state court jury trial in their petition so it is not even clear to the Court, based solely upon the allegations in the petition, whether or not the damages in controversy exceed the threshold amount for a state court jury trial, $50,000.00.[4]

Given that it is not "facially apparent" from the plaintiffs' petition whether their damages will exceed the jurisdictional minimum, the Court must next consider whether Swift, as the removing defendant, has met its burden of proving, through summary judgment-type evidence, that the amount in controversy in this matter is likely to exceed the jurisdictional minimum. Swift did not submit any summary judgment-type evidence with its Notice of Removal. Instead, it relied solely upon the allegations in the plaintiffs' petition, which the Court has already determined do not support a finding that the requisite amount is in controversy in this matter. With its opposition to plaintiffs' remand motion, however, Swift has produced a copy of medical records reflecting treatment that Mr. Darnell received for the injuries he sustained as a result of the accident in question. Those records indicate that, following the accident, Mr. Darnell sought treatment in the emergency room and in a follow-up visit several days after his accident and was diagnosed with a cervical strain, muscle spasms, and associated headaches. He was initially prescribed pain medications and physical therapy for such conditions but was allowed to return to his regular work status without formal restrictions. By the time of his June 21, 2010 follow-up doctor's visit,

---

[4] *See*, La.C.C.P. art. 1732, which provides that a state trial by jury shall not be available in a suit where the amount of no individual petitioner's cause of action exceeds $50,000.00, exclusive of interest and costs.

4

eleven (11) days after the accident, it was noted that his posterior cervical strain had improved and that his muscle spasms were resolved but that Mr. Darnell continued to have headaches and some moderate discomfort in the upper cervical area. On June 30, 2010, Mr. Darnell underwent a CT scan of his head in light of his continued complaints of persistent headaches and upper neck pain. That CT scan produced negative results.

On July 2, 2010, Mr. Darnell's doctor opined that his headaches and complaints of radiating inner left arm pain may be coming from an abnormality of the cervical spine, *i.e.*, a disc herniation. An orthopaedic referral was therefore recommended, and restrictions were placed on Mr. Darnell's work status until an orthopaedist cleared him for commercial driving. He was to continue physical therapy and his prescribed medications. On July 8, 2010, Mr. Darnell saw an orthopaedist, at which time Mr. Darnell reported that he was "overall improved," that his headaches had modified significantly, and that he was "much more comfortable with reference to the posterior cervical area." He was diagnosed with cervical strain syndrome, which was improving, and an intact neurologic examination. The orthopaedist recommended that Mr. Darnell engage in cervical retraction and muscle strengthening exercises; however, it was noted that Mr. Darnell was off all oral medication and that he was released to resume full, unrestricted activity.

On August 2, 2010, Mr. Darnell had a follow-up orthopaedic appointment, at which point it was noted that his cervical strain and headaches appeared to be resolved and that he was "doing quite well." It was further noted that Mr. Darnell was back at work without formal restrictions and tolerating work without any pain or problems. He was therefore released from the orthopaedist's care with instructions to come back on an as-needed basis. The orthopaedist noted that Mr. Darnell did not appear to have any residual

impairment and that his PPI (permanent partial impairment) rating was 0%.

Mr. Darnell continued to undergo chiropractic treatment through January 31, 2011. By his July 6, 2010 visit, he began to note improvement in his neck pain, which continued to get better over the course of the next several weeks. The frequency and severity of his headaches were also noted to have improved by early August 2010. By the time of his August 30, 2010 and November 1, 2010 chiropractic visits, Mr. Darnell stated that he was feeling "a lot better" with only a slight pinch in his neck intermittently. In his chiropractor's final evaluation, it was noted that Mr. Darnell's neck pain was "progressively getting better" and that his pain level was 3 out of 10. In response to patient questioning concerning his "Neck Disability Index," Mr. Darnell stated that his pain was "very mild," that he could look after himself normally without causing extra pain, that he could lift heavy weights without extra pain, that he can read as much as he wants with no neck pain, that he has "slight headaches that come infrequently," that he can concentrate fully without difficulty, that he can work as much as he wants, that he can drive as long as he wants with slight neck pain, that his sleep is slightly disturbed for less than one hour, and that he has no neck pain during all recreational activities. Based upon that questionnaire, his chiropractor diagnosed him with a minimal disability level. Mr. Darnell was instructed to return for chiropractic care on an as-needed basis only. His chiropractor opined that he had reached maximum medical improvement and that he had a "good" prognosis.

Swift contends that the injuries documented in the medical records it produced satisfy its burden of proving that more than $75,000.00 is in controversy in this matter. Swift asserts that contention in a conclusory manner and without citing to any Louisiana

6

Case 3:11-cv-00428-BAJ -CN   Document 8   09/02/11   Page 7 of 10

jurisprudence wherein plaintiffs with the same or similar injuries to those of Mr. Darnell received damage awards in excess of $75,000.00. Contrary to Swift's contention, the undersigned finds that the facts and injuries documented in the medical records submitted do not support a finding that the jurisdictional minimum is in controversy herein. In *Kern v. State Farm Mut. Ins. Co.*, 2006 WL 146199 (E.D.La. 2006), the U.S. District Court for the Eastern District of Louisiana was confronted with an assertion that a plaintiff who sustained a herniated disc at C6 with bilateral encroachment of the neuroforamina together with radiculopathy into the arm had sufficient injuries to satisfy the $75,000 jurisdictional minimum, but the Eastern District disagreed. First, the Eastern District distinguished two (2) cases cited by the removing defendant in that case, finding that the plaintiffs in those cases, who had received in excess of $75,000, had sustained more serious injuries than the plaintiff in *Kern*.[5] The Eastern District then noted that the most recent medical reports concerning the plaintiff in *Kern* indicated that his diagnosis was a "herniated cervical disc vs segmental cervical instability," that he was "not disabled from his current duties," that he had been asked to "continue conservative care" and to "return to the office should his pain become intractable or should he be unable to return to gainful employment." The Eastern District further noted that the records from the plaintiff's most recent visit indicated that he was "symptomatic" but with a "lesser degree of tenderness and better mobility." Based

---

[5] Those cases were *Roig v. Travelers Insurance Company*, 96-164 (La.App. 5 Cir. 12/11/96), 694 So.2d 362 and *Hoyt v. Gray Ins. Co.*, 2000-2517 (La.App. 4 Cir. 1/31/02), 809 So.2d 1076. The plaintiff in *Kern* cited those cases for the proposition that damages related to an "unoperated cervical herniated disc" may exceed $75,000; however, the Eastern District distinguished those cases on the basis that the plaintiff in *Roig* "suffered RSD, TOS, cervical strain lasting several months, thrombosis on at least three occasions and serious psychological damage, leaving her totally disabled and with residual life-long disability and pain," and the plaintiffs in *Hoyt* were found to have "disabling injuries" with "long-range implications" – injuries that were more severe than those sustained by the plaintiff in *Kern*.

7

upon those findings as well as the fact that there was no recommendation for the plaintiff to undergo surgery and no showing of disability in the record, the Eastern District concluded that the circumstances did not support the jurisdictional minimum, even assuming the existence of a herniated cervical disc,[6] and the court cited several Louisiana cases supporting its position.[7]

Mr. Darnell's injuries are similar to those of the plaintiff in *Kern*, but it appears, based upon the records presented to the Court, that Mr. Darnell may have experienced even more improvement of his condition than the plaintiff in *Kern* experienced. Moreover, considering that the medical records indicate that Mr. Darnell has minimal to no residual disability, that he has been able to discontinue even conservative care, that he has been instructed to return to the doctor only on an as-needed basis, and that there is no recommendation in

---

[6] *See also, Story v. Unitrin Specialty Ins. Co.*, 2005 WL 3543731 (E.D.La. 2005)(Record evidence indicated that the jurisdictional minimum did not exist at the time the matter was removed, where only mild strains in the cervical, thoracic, lumbar and bilateral shoulder regions had been diagnosed with no recommended surgery or long-term disability); *Keller v. Sally Beauty Co., Inc.*, 2005 WL 757354 (E.D.La. 2005)(finding that the defendant had not shown that the amount in controversy exceeded $75,000, where a post-accident MRI revealed a herniated disc at C5-6 and C6-7 and where defendant offered no medical support for its contention that the plaintiff was scheduled to undergo shoulder surgery as a result of the fall in question); *Jackson v. Continental Cas.* Co., 2007 Wl 782190 (E.D.La. 2007)(defendant did not meet its burden of proving the requisite amount in controversy where the plaintiff suffered a lumbar strain and contusion of the hip, but her injuries resolved after ten months of conservative care, and the record contained no recommendation for surgery and no finding of disability); *Smith v. Albert*, 2010 WL 420566 (E.D.La. 2010)(citing the Eastern District's various opinions where it has held that the defendant has not carried its burden of proving the required amount in controversy for diversity jurisdiction in cases involving plaintiffs with "unoperated" herniated discs); *Anderson v. Great West Cas. Co.*, 2010 WL 420572 (E.D.La. 2010)(same); *Dright v. Buchert*, 2010 WL 420574 (E.D.La. 2010)(same); *Guzman v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2308099 (E.D.La. 2008)(same); *Bart ex rel. Bart v. Six Flags, Inc.*, 2003 WL 22175987 (E.D.La. 2003)(holding that the defendant failed to satisfy its burden of proof upon removal where the defendant relied upon a conclusory assertion that the plaintiff's injuries of lumbar strain, contusion to the lower back, neck pain, cervical strain, left forearm strain, mental anguish, and loss of enjoyment of life exceeded $75,000).

[7] *See, Misewicz v. Gamso*, 2003-1052 (La.App. 4 Cir. 10/22/03), 860 So.2d 119 ($49,943 total award, including $20,592 for lost wages); *Webb v. Horton*, 01-978 (La.App. 5 Cir. 2/13/02), 812 So.2d 91 ($50,000 general damage award); *Bachemin v. Anderson*, 97-2471 (La. App. 4 Cir. 1998), 717 So.2d 677($5,000 award for past and future pain and suffering); *Lee v. Alsobrooks*, 98-49 (La.App. 5 Cir. 5/27/98), 712 So.2d 1060 ($50,000 general damage award).

the records that he undergo surgery, the undersigned finds that the facts and circumstances contained in the medical records submitted by Swift do not suggest that the amount in controversy in this matter meets the federal jurisdictional minimum. As such, Swift has failed to carry its burden of proving the existence of diversity jurisdiction herein, and this matter should be remanded to state court for further proceedings.[8]

### RECOMMENDATION

For the above reasons, it is recommended that the motion to remand (R. Doc. 6) filed by plaintiffs, Steven B. Darnell and Laura Darnell, should be **GRANTED** and that this matter should be **REMANDED** to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, for further proceedings.

Signed in chambers in Baton Rouge, Louisiana, September 1, 2011.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[8] Because Swift failed to carry its burden of proving that the jurisdictional minimum is in controversy, the burden does not shift back to the plaintiffs to prove to a legal certainty that they cannot recover in excess of $75,000 in this matter, and the Court need not even consider the stipulation that the plaintiffs submitted with their remand motion, wherein their counsel states that the amount of damages that may be recovered in this case is limited to $75,000, exclusive of interest and costs.